NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| | : | **OPINION** |
| | : | |
| v. | : | Criminal Action No. 12-524(DMC) |
| | : | |
| **KAMAU MUNTASIR,** | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

      Before the Court in this criminal matter is Defendant Kumau Muntasir's ("Defendant") motion seeking: (1) dismissal of the indictment, or in the alternative conducting an evidentiary hearing into an alleged violation of Defendant's due process rights; (2) a bill of particulars, (3) immediate production of FED. R. CRIM P. 16 material; (4) immediate production of Brady material; (5) immediate production of items subject to disclosure under Agurs and Giglio; (6) production, before trial, of all items subject to disclosure under the Jencks Act; (7) preservation of rough and/or handwritten notes and drafts of interviews and agents' or police reports for production at some later date if facts and circumstances warrant; and (8) requiring the United States to provide notice before trial of evidence it intends to offer under FED. R. EVID. 404 (b). (Def.'s Motion to Dismiss, September 21, 2012, ECF No. 13). As of the October 15, 2012 hearing on pre-trial motions, Defendant has withdrawn his motion for a bill of particulars and

1

come to an agreement with the United States on each remaining motion regarding production and delivery of discovery materials. After carefully reviewing the record and submissions and for the reasons stated in this Opinion, the Court finds Defendant's Motion to Dismiss the Indictment is **denied**.

## I. BACKGROUND[1]

Defendant is named in a one-count Indictment ("Indictment") for conspiring to distribute five (5) kilograms or more of cocaine, a Schedule II controlled substance in violation of Title 21, United States Code, Sections 841(a)(1)[2] and (b)(1)(A)(ii)[3]. (Indictment of Kamau Muntasir, August 6, 2012, ECF No. 10).

Defendant was arrested in a previous case on September 18, 2008 and charged with two counts of illegal distribution of crack cocaine. Defendant appeared for five distinct proffer sessions at the United States Attorney Office in Newark in the Fall and Winter of 2008 and 2009 but no agreement was reached. On January 11, 2010, Defendant pled guilty to the second count of the indictment in that case, charging him with conspiracy to possess with intent to distribute cocaine. Defendant was sentenced to a prison term of 151 months on July 26, 2010. Defendant was designated to serve his sentence at a federal correctional facility in Butner, North Carolina ("FCI-Butner"). The United States alleges that on or about September 2011, while incarcerated at FCI-Butner, Defendant initiated discussions with fellow FCI-Butner inmate, Thomas Grady Brown, about a potential transaction involving 25 kilograms of cocaine. The United States

---

[1] Unless otherwise indicated, the facts contained in Background section are taken from the parties' respective moving papers.

[2] Section 841(a)(1) of Title 21 provides: "it shall be unlawful for any person knowingly or intentionally– (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1).

[3] Section 841 (b)(1)(A)(ii) provides for penalties for any person who violates section (a). See 18 U.S.C. § 841 (b)(1)(A)(ii).

further alleges that Defendant's purpose in initiating the discussion with Brown was to obtain a drug supplier for his friend Eugune "Wali" Braswell, who resided in New Jersey. The United States possesses and has produced a series of phone calls beginning on or around September 2011 and ending in March 2012, in which Defendant and Braswell discuss the cocaine deal. During the course of these calls, the United States alleges Defendant informed Braswell about his discussions with Brown, when Braswell could expect a call from Brown's associates, the price of the cocaine, and the profits each would receive from the deal.

On or about December 2011, Mike Mechalske, a Special Investigative Service Technician with the Bureau of Prisons staffed at FCI-Butner, notified the Federal Bureau of Investigations ("FBI") of what he believed to be a conspiracy between Muntasir and Braswell to purchase 25 kilograms of cocaine. Pursuant to an FBI sting operation and during the course of a recorded phone conversation, an undercover FBI agent contacted and arranged to meet Braswell in New Jersey on March 16, 2012, for the ostensible purpose of delivering the agreed-upon 25 kilograms of cocaine. When Braswell and the undercover agent met, Braswell requested that the first sale be for one kilogram in exchange for payment of $14,000 and showed the undercover officer a collection of $100 bills. Braswell was then arrested and charged in a one-count complaint with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine. Braswell pled guilty on March 16, 2012.

After Braswell's arrest, federal prosecutors attempted to gain Defendant's cooperation against individuals with pending federal and state charges in New Jersey but Defendant declined to participate. Defendant was subsequently transported to New Jersey and further attempts by the government to elicit Defendant's cooperation yielded the same result. On April 11, 2012, the government obtained an indictment against Defendant. Eugene "Wali" Braswell was charged in

3

a separate complaint. On September 27, 2012, Defendant, through counsel, submitted the aforementioned motion.

## II. DISCUSSION

Defendant initially made eight motions seeking: (1) dismissal of the Indictment, or in the alternative conducting an evidentiary hearing into an alleged violation of Defendant's due process rights; (2) a bill of particulars, (3) immediate production of FED. R. CRIM P. 16 material; (4) immediate production of Brady material; (5) immediate production of items subject to disclosure under Agurs and Giglio; (6) production, before trial, of all items subject to disclosure under the Jencks Act; (7) preservation of rough and/or handwritten notes and drafts of interviews and agents' or police reports for production at some later date if facts and circumstances warrant and (8) requiring the government to provide notice before trial of evidence it intends to offer under FED. R. EVID. 404 (b). After the October 15, 2012 motions hearing, Defendant's motion for dismissal of the indictment was the only motion that remained. As to the seven additional motions, Defendant has withdrawn his motion for a bill of particulars and come to an agreement with the United States as to the timing and productions of the materials pertaining to discovery. This Opinion will thus discuss only the Defendant's Motion to Dismiss the Indictment.

Rule 12(b)(2) provides that challenges to an Indictment may properly be made prior to trial. See FED. R. CRIM. P. 12(b)(2). On a motion to dismiss an indictment, the Court must assume the allegations are true. United States v. Kemp, 500 F.3d 257, 280 (3rd Cir. 2007). The Supreme Court has stated that:

> an indictment is sufficient if it, first, contains, the elements, of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

4

Hamling v. United States, 418 U.S. 87, 117 (1974); see, e.g., Hagner v. United States, 285 U.S. 427 (1932); United States v. Debrow, 346 U.S. 374 (1953). Defendant asserts that government's alleged denial of his due process rights warrants dismissal of the indictment against him. Defendant asserts the government "[took] advantage of his extremely vulnerable economic situation" and "engaged a fellow inmate to push him into a drug conspiracy." (Def.'s Br., September 21, 2012, ECF No. 13). Defendant contends that the United States' conduct was "outrageous" and constitutes "overinvolvement" sufficient to warrant dismissal of the indictment, or in the alternative, an evidentiary hearing to fully and completely develop the nature and extent of the government's involvement in the incident in question. (Id.) This Court disagrees.

A criminal defendant may raise a due process challenge to an indictment against him by claiming the government investigation in the matter was "outrageous" and in violation of his due process rights. United States v. Nolan-Cooper, 155 F.3d 221, 228 (3d Cir. 1998). The Third Circuit has recognized that, "[t]he defense of outrageous government conduct examines whether a defendant's due process rights have been violated because the government created the crime for the sole purpose of obtaining a conviction." United States v. Pitt, 193 F.3d 751, 759-60 (3d Cir. 1999) (citing United States v. Russell, 411 U.S. 423, 431 (1973)). At the heart of the defense of outrageous government conduct is an alleged defect in the prosecution itself. See Pitt, 193 F. 3d at 760 (citing United States v. Nunez–Rios, 622 F.2d 1093 (2d Cir. 1980)). The defense is limited, however, as "[t]he limitations of the Due Process Clause . . . come into play only when the Government activity in question violates some protected right of the defendant." United States v. Nolan-Cooper, 155 F.3d 221, 229 (3d Cir. 1998) (quoting United States v. Payner, 447 U.S. 727, 737 n. 9 (1980)). Due to the doctrine's extraordinary nature, the courts have been

5

"extremely hesitant" to uphold a claim that law enforcement conduct violates the Due Process clause.  See Nolan-Cooper, 155 F.3d at 230 (citing United States v. Voight, 89 F.3d 1050,1065 (3d Cir. 1996)).  The defense is not to be applied "each time the government acts deceptively or participates in a crime that it is investigating."  Id. at 231  (citing United States v. Mosley, 965 F.2d 906, 910 (10th Cir. 1992)).

Defendant's success on this motion is predicated on his ability to demonstrate that the United States engaged in conduct deemed "shocking, outrageous, and clearly intolerable." Nolan-Cooper, 155 F.3d at 231.  Defendant has not met that burden here.  Defendant has failed to successfully assert that this crime was created by the United States for the sole purpose of obtaining a conviction, as the standard for assertion of this defense dictates.  Defendant participated in a series of emails and recorded phone conversations over the course of several months in which he arranged a deal for the procurement of multi-kilogram quantities of cocaine, and in one such recorded call, confirmed with Braswell that the drug transaction was a "done deal" and Braswell could expect to make "seven figures" as a result.  (Criminal Complaint by Kevin Connell, Sept. 21, 2012, ECF No. 13-4).  Although Defendant cites to his "distressed economic condition" and alleges the United States took advantage of his financial vulnerabilities, that is insufficient to prove that the Unites States' investigative tactics rise to the level of "shocking, outrageous, and clearly intolerable." See Nolan-Cooper, 155 F.3d at 231-31 (quoting Mosley, 965 F.2d at 910).  In applying this defense, "scrupulous restraint" is required and economically-vulnerable status of a federal prisoner, far from a rarity, does not transform the government's investigative tactics, even where deceitful, to "outrageous conduct."  See United States v. Jannotti, 673 F.2d 578, 607 (3d Cir. 1992) (stating that in the context of a due process analysis, the court must exercise caution before "denouncing law enforcement conduct as

6

constitutionally unacceptable" as "the ramifications are wider and more permanent than when only a statutory defense is implicated."). The facts of this case do not rise to level of "outrageous government conduct"and thus dismissal of the Indictment is not appropriate. Furthermore, an evidentiary hearing to determine the nature and extent of the United States' involvement is not necessary; the facts alleged by the Defendant do not warrant further inquiry into the matter.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss the Indictment is **denied**. An appropriate order accompanies this Opinion.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       October  15 , 2012
Original:   Clerk's Office
cc:         All Counsel of Record
            File